In re Franklin Edward KEISLER and Barbara Dean Keisler, Debtors.

UNITED STATES of America, DEPARTMENT OF VETERANS AFFAIRS, Plaintiff,

v.

Franklin Edward KEISLER and Barbara Dean Keisler, Defendants.

Bankruptcy No. 92–0089–8P7.
Adv. No. 93–148.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 22, 1994.

Thomas Joel Chawk, Lakeland, FL, for debtors/defendants.

John Patrick, Jr., Tampa, FL, U.S. Atty. Office, Dept. of Veterans Affairs, Judy Dailey, Bay Pines, FL, for plaintiff.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OF LAW

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is a Complaint to Determine Dischargeability of a Debt filed by Franklin Edward Keisler and Barbara Dean Keisler (Debtors). The facts relevant to the resolution of this controversy as they appear in the record are as follows.

Franklin Keisler (Debtor) served in the United States Air Force until May 6, 1986 when he separated from service. Upon his termination, the Air Force paid him a lump sum disability severance payment of $32,-141.00. This disability severance payment was paid in lieu of regular military retirement pay pursuant to 10 U.S.C. § 1212 (1991), which provides that if the disability of the service person is rated at less than 30% the disability benefit may be paid in a lump sum. Upon Keisler's discharge from the service, the United States Veterans Administration (VA) rated his disability at 20%, therefore, he was entitled to the lump sum payment.

On July 30, 1991, the VA changed Keisler's disability rating to 100%. Consequently, beginning on April 1, 1993, the VA has paid Keisler monthly benefits in the amount of $1,796.00. As a result of this change in disability benefit, the VA is deducting from Keisler's monthly benefits the amount of $162.00 per month in order to recover 20% lump sum payment made on May 6, 1986. As of April 1, 1993 a balance of $20,536.00 of the 20%-rated disability payment remained for recoupment and the VA continues to deduct the $162.00 per month from Keisler's benefits.

On January 6, 1992 the Debtor and his wife, Barbara Dean Keisler, filed their Joint Petition for Relief under Chapter 7. On Schedule F, the Debtors listed the following creditors holding unsecured claims:

| | |
|---|---|
| U.S. Air Force<br>Accounting & Finance<br>MacDill AFB<br>Tampa, FL | $25,000.00 |
| V.A. Regional Office<br>P.O. Box 1437<br>St. Petersburg, FL 33731 | $25,000.00 |

According to these Agencies, that is neither the Air Force nor the VA received timely notice of the bankruptcy and neither filed a claim in the bankruptcy case. On May 7, 1992, the Debtors received their discharge, and in due course the case was closed.

On January 22, 1993, the Debtors filed a Motion to Reopen the case in order to amend Schedule F to include MacDill Air Force Base (sic) and the Veteran's Administration Regional Office (sic). On January 27, 1993 this Court entered an Order Granting Motion to Reopen Case and allowed the Debtors to file an amendment to their bankruptcy schedules and a Complaint to determine dischargeability of the debts owed by the Debtor to the Government. The stated purpose of the Amendment to Schedule F was to list the Air Force, VA, and the U.S. Attorney as creditors and to have the debts to those agencies discharged. On March 9, 1993, the Debtors filed the Complaint presently before the Court seeking a determination that the

debts due and owing the VA in the approximate amount of $25,000.00 is dischargeable.

■ Based upon the foregoing, the Debtors contend that the amount owed to the VA is a debt which was discharged when the Debtors obtained their general discharge on May 7, 1992. In opposition, the VA contends that it is not a creditor; that the amounts withheld from the Debtor are in fact recoupment for the overpayment of disability payments made to the Debtor. Therefore, the deduction is not a debt and cannot be discharged in the bankruptcy.

11 U.S.C. § 101(11) defines "debt" as liability on a "claim." 11 U.S.C. § 101(4) defines "claim" as a "right to payment." The legislative history of § 101(11) and (4) establishes Congress' intention to exclude certain types of obligations from these definitions. Citing the situation in which a person is insured by a life insurance policy, the Senate Report states as follows:

> "Debt" is defined in paragraph (12) [now (11) ] as a liability on a claim. The terms "debt" and "claim" are coextensive: a creditor has a "claim" against the debtor; the debtor owes a "debt" to the creditor. This definition of "debt" and the definition of "claim" on which it is based, proposed 11 U.S.C. 101(4), does not include a transaction such as a policy. Under that kind of transaction, the debtor is not liable to the insurance company for repayment; the amount owed is merely available to the company for setoff against any benefits that become payable under the policy. As such, the loan is not a claim (it is not a right to payment) that the company can assert against the estate; nor is the debtor's obligation a debt (a liability on a claim) that will be discharged under proposed 11 U.S.C. 523 or 524.

Senate Report No. 95–989, 1978 *U.S.Code Cong. & Admin.News*, p. 5785.

■ At the outset, it should be noted that Congress enacted certain statutory provisions to effectuate its policy of opposing double compensation for physical disabilities incurred during service in the military. *See* 10 U.S.C. §§ 1174, 1212 (1993). 10 U.S.C. § 1174(h)(2) (1993) provides:

> A member who has received ... severance pay ... based on service in the armed forces shall not be deprived, by reason of his receipt of such ... severance pay, ... of any disability compensation to which he is entitled under the laws administered by the Department of Veterans Affairs, but there shall be deducted from that disability compensation an amount equal to the total amount of ... severance pay ... received.

10 U.S.C. § 1212(c) provides:

> The amount of disability severance pay received under this section shall be deducted from any compensation for the same disability to which the former member of the armed forces or his dependents become entitled under any law administered by the Veteran's Administration.

Together, these two sections require that the VA recoup severance payments made to former members of the armed forces by deducting the amount of the severance payment from future benefits paid to the former member. Such statutory arrangement prevents double compensation for the same disability. Deductions from future benefits based on the amount of a loan from the retirement system did not constitute a debt that was dischargeable in bankruptcy. *In re Villarie*, 648 F.2d 810 (2nd Cir.1981). Deductions made by the VA to recoup over payment is not a debt owed by the debtor and therefore, the VA could continue to deduct part of the total severance payment made to the debtor from future benefit payments. *Newman v. Veterans Administration*, 35 B.R. 97, 99 (Bankr. W.D.N.Y.1983). Congress has expressly provided for the prevention of double recovery for veterans by requiring the VA to deduct military disability severance pay from VA disability benefits to prevent duplication of payments. *Director, Office of Worker's Compensation Programs, U.S. Dept. of Labor v. Clark*, 848 F.2d 125 (9th Cir.1988).

In view of the statutes and case law, this Court is satisfied that the monthly deductions of the overpaid disability benefits is not a debt. It is apparent that the statutory scheme provides a mechanism to recoup overpayment of disability benefits to military service persons. To conclude that the deductions are a debt and allow them to be dis-

charged would only serve to give a windfall to the debtor, who then would have received 120% in disability benefits. Based upon the foregoing, this Court is satisfied that the deductions represent a recoupment to the VA and as such are not a debt. Inasmuch as it is not a debt, the question of dischargeability is moot. A separate final judgment shall be entered in accordance with the foregoing.