**REVISED SEPTEMBER 27, 2002**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 01-51027

_____

In the Matter of:  HERMAN FELIX HORN,

Debtor.

_____

HERMAN FELIX HORN,

Appellant,

versus

UNITED STATES DEFENSE FINANCE AND ACCOUNTING SERVICE,

Appellee.

_____

Appeal from the United States District Court
For the Western District of Texas
(No. A-01-CV-481-JN)

_____

September 6, 2002

Before REAVLEY, BARKSDALE, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

The district court's grant of summary of judgment to the government agency appellee allowed

the agency to continue a statutory reduction of appellant's military retirement pay, even though

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

appellant had filed for bankruptcy. The district court determined that the statutory reduction was a "recoupment," not a dischargeable debt, under bankruptcy law. We agree and affirm.

## I. Facts and Proceedings Below

When appellant Herman Horn separated from Air Force active duty July 15, 1992, he received a Special Separation Payment ("SSP") of $106,327.10 under 10 U.S.C. § 1174a. Horn re-entered active duty in 1994 and retired at the end of 1997, entitling him to regular retirement benefits to be paid by appellee, the United States Defense Finance and Accounting Service ("DFAS"). If a person receives an SSP but later qualifies for retirement pay, the government will deduct the portion attributable to the pre-SSP service, until the government has fully deducted the SSP amount. 10 U.S.C. § 1174(h)(1).[1] In short, the law prevents military retirees from collecting two retirements for the same period of service.

In Horn's case, the government reduced his retirement benefits by $2,049.97 each month. Four months later, Horn filed for bankruptcy and the statutory reduction was suspended. The bankruptcy court granted DFAS summary judgment, allowing the reduction to continue, because the court considered the reduction a "recoupment," not a dischargeable debt. The district court affirmed, and Horn appealed.

---

[1]The section in full reads:
(h) Coordination with retired or retainer pay and disability compensation.—
(1) A member who has received separation pay under this section, or separation pay, severance pay, or readjustment pay under any other provision of law, based on service in the armed forces, and who later qualifies for retired or retainer pay under this title or title 14 shall have deducted from each payment of such retired or retainer pay so much of such pay as is based on the service for which he received separation pay under this section or separation pay, severance pay, or readjustment pay under any other provision of law until the total amount deducted is equal to the total amount of separation pay, severance pay, and readjustment pay received.

## II. Standard of Review

Even though we are the second level of appellate review, "we perform the identical task as the district court, reviewing the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law *de novo*." *Matter of U.S. Abatement Corp.*, 79 F.3d 393, 397 (5th Cir. 1996) (footnotes omitted). The facts are undisputed.

## III. Analysis

Horn argues that the money withheld from his retirement benefits is a debt that DFAS is enjoined from collecting under the bankruptcy laws. *See* 11 U.S.C. § 524(2). He correctly points out that the retirement reduction is not listed among the "[e]xceptions to discharge" in § 523, and this Court is aware of the familiar rule that we should not create discharge exceptions for which Congress did not expressly provide. *See Gleason v. Thaw*, 236 U.S. 558, 562 (1915) ("In view of the well-known purposes of the bankruptcy law, exceptions to the operation of a discharge thereunder should be confined to those plainly expressed.").

DFAS counters that the reduction is not a debt at all; rather, it is a recoupment. The equitable doctrine of recoupment "allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the same transaction to arrive at a just and proper liability on the plaintiff's claim." *Matter of U.S. Abatement Corp.*, 79 F.3d at 398 (quoting *Holford v. Powers*, 896 F.2d 176, 178 (5th Cir. 1990)). Recoupment is "essentially a defense to the debtor's claim against the creditor," *id*. (citation omitted), and "to the extent that a party is entitled to recoupment of funds, 'the debtor *has no interest* in the funds.'" *Id*. (quoting *Holford*, 896 F.2d at 179) (emphasis in original).  In other words, "recoupment is in the nature of a right to reduce the amount of a claim, and does not involve the existence of independent obligations;" it "applies to

3

*define* the obligations in question, rather than establish or enforce a separate debt." 5 COLLIER ON BANKRUPTCY § 553.10 (15th ed. 2002) (emphasis added). Because we conclude that the payments and reductions arise under a single statutory scheme— the calculation of Horn's retirement benefits —we agree with the district court that the reduction is a recoupment.

No Courts of Appeal have addressed whether a reduction of military retirement pay under § 1174(h)(1) is a recoupment, but the lower courts uniformly hold that when the government reduces disability pay under § 1174(h)(2) to take account of a previous SSP (i.e., to prevent double recovery for the same disability), the reduction is a recoupment, not a debt. *See, e.g., Snodgrass v. Dep't of Veterans Affairs (In re Snodgrass)*, 244 B.R. 353 (Bankr. W.D. Va. 2000); *Boyd v. Dep't of Veterans Affairs (In re Boyd)*, 223 B.R. 536 (Bankr. E.D. Ark. 1998); *United States Dep't of Veterans Affairs v. Keisler (In re Keisler)*, 176 B.R. 605 (Bankr. M.D. Fl. 1994); *see also Palm v. United States*, 904 F.Supp. 1312, 1314 (M.D. Ala 1995) (describing § 1174(h) as a recoupment statute). We find the reasoning of these courts persuasive in the present case.

A debt is defined as a "liability on a claim," 11 U.S.C. § 101(12), but there is no sense in which DFAS has a "claim"[2] against Horn. DFAS cannot sue a retiree to recover the SSP amount, nor can it sue the estate of a deceased retiree if the balance has not been fully recovered. The government is only permitted to reduce the monthly benefits as described in § 1174(h)(1), and thus, it would be peculiar to describe the statutory reduction as a debt. It is more natural to describe the reduction as

---

[2]"Claim" is defined under 11 U.S.C. § 101(5) as a
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

part of the "defin[ition of] the obligation in question," *see* COLLIER, *supra*, at § 553.10, because it tells officials how to compute an individual's retirement benefits.

Discharging the reduction as a debt would be a windfall for Horn because it would allow him to "receive the part of the deal most beneficial to him" (the SSP lump-sum payment) "while avoiding the aspects... least desirable to him" (the later reduction of retirement). *See Kosander v. Metropolitan Life Ins. Co. (In re Kosander)*, 157 F.2d 1011, 1016 (5th Cir. 1998) (characterizing insurance company's commission advances to the debtor as overpayments which may be recouped). As mentioned, recoupment is an equitable doctrine, and the equities weigh in the government's favor in this case.

Horn directs this Court's attention to two cases, from other jurisdictions, where statutory reductions were considered debts. In *Lee v. Schweiker*, the government took $102 out of the debtor's monthly $406 Social Security check because she had previously received an overpayment. 739 F.2d 870, 873 (3rd Cir. 1984). The court, noting that Social Security benefits are "statutory 'entitlements' rather than contractual rights" and that "the primary purpose of these statutes is to provide income security to the recipients," held the government could not recoup the overpayments. *Id*. at 876.

Without expressing whether we agree with *Lee*, the case is distinguishable. The overpayment in *Lee* appears to have been simply an error,[3] but here, Horn took the lump-sum SSP *knowing* that he would not be able to later obtain retirement benefits for the same period of service. Also, military retirement benefits are meant to provide *income* to recipients (Horn received over $100,000) more so than "income *security,*" as was the case in *Lee*. *Id*. (emphasis added).

---

[3]The debtor had received other income which was not reported, but it is unclear from the opinion whether the error was made by the debtor, her employer, or the government.

In *In re Healthback*, the federal government used annual projections to make interim Medicare reimbursement payments to the debtor, a home health care provider. 226 B.R. 464, 467 (Bankr. W.D. Ok. 1998). An annual audit determined the precise amounts owed, and later payments were adjusted to compensate for any overpayment or underpayment. *Id*. at 467-68. When the debtor filed for bankruptcy, the government had been withholding a portion of its reimbursement payments to compensate for past overpayment. *Id*. The court noted that the federal government's annual adjustment "must, necessarily, depend upon the amounts the debtor claims *for each separate transaction* between it and its patient" and concluded that "[t]hese transactions are not so inextricably intertwined that they must be considered one transaction." *Id*. at 477-78 (emphasis added). The court also noted that the equities pointed towards counting the withholdings as debt because the debtor would "cease to exist" without the funds: "Thus, the harm to the debtor, its 200 employees, patients, and creditors will be the highest degree of harm possible." *Id*. at 476.

Again, without agreeing or disagreeing with *Healthback*, we note the differences. The present case involves payments to *one* individual for the retirement benefits attributable to the *same* period of service. By contrast, the federal government in *Healthback* was withholding full reimbursement for a *new* set of patients because it had over-reimbursed for *past* patients. Second, as explained above, equity considerations weigh in favor of recoupment in the present case, but they weighed against recoupment in *Healthback*.

## IV. Conclusion

In sum, we conclude that §§ 1174a and 1174(h) are part of the same statutory scheme because the grant of a special separation payment is made with the understanding that later retirement benefits

6

will be reduced if the payment turns out to be premature. A reduction in payments under § 1174(h) is a recoupment, not a debt.

AFFIRMED.